CLERK'S OFFICE
A TRUE COPY
Aug 04, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person, property, or object to be tracked )*<br><br>A white 2014 Honda Ridgeline, bearing Wisconsin Dealer License Plates MV4100, VIN: 5FPYK1F73EB002963 (Subject Vehicle) | Case No. 23 MJ 136 |

## TRACKING WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and  ☑ is located in this district;  ☐ is not now located in this district, but will be at execution;  ☐ the activity in this district relates to domestic or international terrorism;  ☐ other: _____.

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that
*(check the appropriate box)*  ☐ using the object  ☑ installing and using a tracking device
to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: Subject vehicle located at 8360 28th Avenue, Kenosha, WI.

**YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by  8/14/2023  *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until  9/18/2023  *(no later than 45 days from the date this warrant was issued)*.  The tracking may occur within this district or another district.  To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*
☑ into the vehicle described above         ☑ onto the private property described above
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)*  Hon. William E. Duffin  and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ Pursuant to 18 U.S.C. § 3103a(b)(1), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and this warrant prohibits the seizure of any tangible property or any wire or electronic communications (as defined in 18 U.S.C § 2510).  I therefore authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☑ until, the facts justifying, the later specific date of  01/31/2024  .

Date and time issued:  8/4/2023 at 1:07 PM                *[signature: William E. Duffin]*
                                                                              *Judge's signature*

City and state:    Milwaukee, Wisconsin                    Honorable William E. Duffin, U.S. Magistrate Judge
                                                                              *Printed name and title*

Case No.

### Return of Tracking Warrant With Installation

1. Date and time tracking device installed: _____

2. Dates and times tracking device maintained: _____

3. Date and time tracking device removed: _____

4. The tracking device was used from *(date and time)*: _____

   to *(date and time)*: _____ .

### Return of Tracking Warrant Without Installation

1. Date warrant executed: _____

2. The tracking information was obtained from *(date and time)*: _____

   to *(date and time)*: _____ .

### Certification

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Aug 04, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of )<br>*(Identify the person to be tracked or describe* )<br>*the object or property to be used for tracking)* )<br>A white 2014 Honda Ridgeline, bearing Wisconsin )<br>Dealer License Plates MV4100, VIN: )<br>5FPYK1F73EB002963 (Subject Vehicle) ) | Case No. 23 MJ 136 |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __841 & 846__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
Subject vehicle located at 8360 28th Avenue, Kenosha, WI.

☑ Delayed notice of __180__ days (give exact ending date if more than 30 days: __01/31/2024__) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MATTHEW MACENKA
Digitally signed by MATTHEW MACENKA
Date: 2023.08.03 10:34:35 -05'00'

*Applicant's signature*

Matthew J. Macenka, DEA SA
*Applicant's printed name and title*

Sworn via telephone.

~~Sworn to before me and signed in my presence.~~

Date: 8/4/2023

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Matthew J. Macenka, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the location of a vehicle more particularly described as a **white 2014 Honda Ridgeline, bearing Wisconsin Dealer License Plates MV4100, VIN: 5FPYK1F73EB002963** (**Subject Vehicle**).

2. I am employed by the DEA and am an investigator/law enforcement officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21, United States Code Section 841.

3. I have been a Special Agent with DEA since May 2023. From February 2023 to May 2023, I attended and completed the DEA 16-week training academy in Quantico, Virginia. While at the DEA training academy, I received instruction in investigative techniques, drug identification, physical surveillance, undercover negotiations, telecommunication investigations, and drug-related law. I have also received on-the-job training from supervisors, senior agents, and detectives regarding the manner in which drugs are trafficked and money is laundered.

4. I am currently assigned to the DEA Chicago, Illinois Field Division, Milwaukee District Office ("DEA Milwaukee Office"). Within the DEA Milwaukee Office, I am currently assigned to an enforcement group targeting drug traffickers operating within the DEA Milwaukee Office's area of responsibility.

1

5. Prior to being employed by the DEA, I was employed as a Police Officer with the Philadelphia Police Department in Philadelphia, Pennsylvania for approximately six and a half years. From June 2016 until March 2017, I attended the Philadelphia Police Academy as a Police Officer Recruit. Upon my graduation from the police academy, I worked as a Patrol Officer from March 2017 until December 2022.

6. I have a Bachelor of Science degree in Business Administration from Holy Family University in Philadelphia, Pennsylvania.

7. By virtue of my employment as a Special Agent and prior law enforcement experience, I have performed various tasks, which include, but are not limited to: (a) involvement in numerous investigations into illegal drug distribution conspiracies which were often self-initiated; (b) prepared factual reports which are incorporated into criminal affidavits and charging documents in cooperation with prosecuting attorneys; (c) participated in the arrest of multiple individuals for drug related offenses; (d) functioned as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs; (e) conducted interviews of witnesses and victims to gain information pertinent to the criminal investigation; and (f) questioned suspects in order to elicit confessions or to gain their cooperation.

8. In the course of conducting drug investigations and arrests, I have personally interviewed persons involved in the distribution of illegal drugs. I am aware of techniques and practices used by drug traffickers to avoid detection by law enforcement. Among these techniques are the use of counter surveillance, multiple locations at which to conduct drug related activities, hidden compartments in vehicles used to conceal narcotics and currency, mobile telephones, voice mail, texting, instant messaging, email, encrypted applications, social

media applications and the use of numerous associates and "workers" to further their criminal organization.

9. The facts contained in this Affidavit are based in part on information provided to me by other law enforcement officers, either directly or indirectly through their reports or affidavits, information from a sources of information (CS) and analyses of telephone records. I have also relied on my experience, training, and background as a Special Agent with the DEA in evaluating this information.

10. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by the user of the **Subject Vehicle**, Isaiah ALBRECHT-Facundo ("ALBRECHT-Facundo"), and others not yet identified, and ALBRECHT-Facundo is utilizing the **Subject Vehicle** to facilitate his drug trafficking activities. There is also probable cause to believe that the tracking of the **Subject Vehicle** will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## II. PROBABLE CAUSE

### Background Information

11. In April 2023, DEA investigators, along with a Kenosha Police Department (KPD) Special Investigations Unit (SIU) Detective and a KPD SIU gang officer, debriefed a source of information (SOI-1) regarding the drug trafficking activities of Isaiah ALBRECHT-Facundo (ALBRECHT-Facundo). SOI-1 provided historical information dating as far back as 3 years ago. However, SOI-1 indicated that based on his/her conversations with various people

3

still closely associated with ALBRECHT-Facundo, the majority of the historical information provided by SOI-1 remains accurate.

12. During the debriefing, SOI-1 indicated that he/she previously knew ALBRECHT-Facundo to distribute kilogram quantities of cocaine in Kenosha, WI and believes ALBRECHT-Facundo continues to distribute cocaine. SOI-1 also provided investigators with a picture of a **white 2014 Honda Ridgeline, bearing Wisconsin Dealer License Plates MV4100, VIN: 5FPYK1F73EB002963 (Subject Vehicle)** indicating that he/she had just met with ALBRECHT-Facundo and ALBRECHT-Facundo was driving the **Subject Vehicle**. SOI-1 has been providing information to investigators since approximately April 2023. SOI-1 is providing information in exchange for monetary compensations, does not have pending charges, and has no criminal history. The information provided by SOI-1 has been independently corroborated and deemed accurate by investigators. As such, investigators believe SOI-1 to be truthful.

**Controlled Purchase of Cocaine from ALBRECHT-Facundo on June 27, 2023**

13. In June 2023, investigators met with a confidential source (CS-2) who had direct knowledge of ALBRECHT-Facundo's drug trafficking activities. CS-2 stated that ALBRECHT-Facundo currently sells multiple ounces of cocaine on a regular basis, and believes ALBRECHT-Facundo obtains multiple kilograms of cocaine at a time. CS-2 stated that he/she knows ALBRECHT-Facundo drives the **Subject Vehicle**, operate a tow truck and resides at 8360-28th Avenue, Kenosha, WI.

14. CS-2 has been providing information to investigators since approximately June, 2023. CS-2 is providing information in exchange for consideration in potential future charges of possession with intent to distribute cocaine and carrying a concealed weapon. CS-2 is not being provided any monetary compensation. CS-2's criminal history includes convictions for

4

disorderly conduct, misdemeanor bail jumping, criminal damage to property, and motor vehicle traffic offenses. The information provided by CS-2 was voluntarily provided against his/her penal interests, has been independently corroborated and deemed accurate. As such, investigators believe CS-2 to be truthful.

15. On June 27, 2023, CS-2 was in direct communication with ALBRECHT-Facundo through the Snapchat application in regards to obtaining cocaine later that same day. Investigators took pictures of their conversation. During the conversation, ALBRECHT-Facundo, utilizing the Snapchat display name "Facundo_" (Snapchat handle is "izayzay12"), stated, among other things, "How fast you think you're gonna move this one?" and "Can you just take 2 right now? Then if you need more I'll get you more ?"

16. Based on training and experience, investigators believe ALBRECHT-Facundo was negotiating with CS-1 concerning the quantity of drugs he was going to provide to CS-2 based on how fast CS-2 would "move" (sell) the units.

17. Following that conversation, investigators searched CS-2 and CS-2's vehicle for money, drugs or other contraband, with negative results. CS-2 was then provided $4,000 of recorded United States Currency to purchase five (5) ounces of cocaine from ALBRECHT-Facundo. CS-2 was also equipped with audio and video recording devices. CS-2 then departed the offsite meeting location for the Festival Foods (3207 80th Street, Kenosha, State and Eastern District of WI), where the controlled purchase was to take place. Investigators followed CS-2 to the meeting location, without losing sight of CS-2. Shortly after arriving at the Festival Foods, investigators observed CS-2 park in the parking lot near a cart rack.

18. Similarly, in anticipation of the meeting, a detective from the Pleasant Prairie Police Department (PPPD) assigned to SIU established surveillance at ALBRECHT-Facundo's

5

residence, located at 8360-28th Avenue, Kenosha, WI. Upon establishing surveillance, the PPPD detective observed the **Subject Vehicle** parked towards the rear of the residence. Approximately 10 minutes after CS-2 arrived in the parking lot, the PPPD detective observed a male subject matching the description of ALBRECHT-Facundo exit the front door of ALBRECHT-Facundo's residence and walk towards the rear of the residence. As the subject walked towards the rear of the residence, the PPPD SIU detective briefly lost a visual of the subject, but shortly thereafter, the **Subject Vehicle** backed out of the driveway and left the area towards the Festival Foods. The PPPD detective did not observe anyone else enter the **Subject Vehicle** or exit the residence at that time. The Festival Foods is approximately one mile from ALBRECHT-Facundo's residence so investigators did not follow the **Subject Vehicle** as it traveled towards Festival Foods.

19. Approximately 2 minutes later, surveillance units observed the **Subject Vehicle** traveling westbound on 80th Street heading towards Festival Foods. A few seconds later, investigators observed the **Subject Vehicle** enter the Festival Foods parking lot off 80th Street. Investigators observed that the **Subject Vehicle** traveled southbound through the eastside of the lot, to the front of the store before turning north and traveling back north through the lot. As the **Subject Vehicle** traveled back north, investigators observed the **Subject Vehicle** park directly next to CS-2's vehicle. Investigators had a clear visual of both CS-2's vehicle and the **Subject Vehicle**.

20. After the **Subject Vehicle** parked, investigators observed CS-2 exit CS-2's vehicle and enter the front passenger seat of the **Subject Vehicle**. Investigators observed CS-2 remain in the **Subject Vehicle** for a short period of time before exiting the **Subject Vehicle** and returning to the driver's seat of CS-2's vehicle. Immediately thereafter, investigators observed the **Subject**

6

**Vehicle** leave its parking spot, travel north through the lot before exiting the lot on the west side of the parking lot and begin to travel westbound on 80th Street. SIU surveillance units followed the **Subject Vehicle** as it proceeded westbound on 80th Street then northbound on 60th Avenue before terminating surveillance on the **Subject Vehicle**. Later that same day, investigators observed the **Subject Vehicle** parked at ALBRECHT-Facundo's residence (8360 28th Avenue, Kenosha, WI).

21. Simultaneous to surveillance following the **Subject Vehicle**, DEA and SIU investigators followed CS-2 out of the parking lot and back to the same offsite meeting location. Investigators did not lose a visual of CS-2' vehicle. DEA and SIU investigators again met with CS-2. Investigators observed a clear plastic sandwich sized bag containing a white substance, believed to be cocaine, within the center console of CS-2's vehicle. SIU Detectives collected the cocaine as evidence. SIU Detectives also searched CS-2 and CS-2's vehicle for additional drugs, money, weapons, or other contraband with negative results and collected the audio and visual recording devices from CS-2. CS-2 confirmed that ALBRECHT-Facundo was the driver and sole occupant of the **Subject Vehicle** and provided the bag containing the suspected cocaine to CS-2 for the $4,000.00 USC.

22. SIU Detectives later field tested a small sample of the suspected cocaine which resulted in a positive indication for cocaine. The total weight of the cocaine was 141.3 grams of cocaine.

23. Investigators also later reviewed the audio and video recordings from the controlled purchase. During the review, investigators observed ALBRECHT-Facundo as the driver of the **Subject Vehicle**. Investigators also heard CS-2 close the door of the **Subject Vehicle** and immediately thereafter observed ALBRECHT-Facundo extend his hand towards

7

CS-2. Investigators observed the same bag containing cocaine which was later seized by investigators was in ALBRECHT-Facundo's hand as he extended it towards CS-2. The video showed both ALBRECHT-Facundo's face and hand with cocaine in the same shot. While ALBRECHT-Facundo still had the cocaine in his one hand, investigators observed CS-2's hand containing the recorded United States Currency extend towards ALBRECHT-Facundo and ALBRECHT-Facundo's other hand grab the United States Currency. As soon as ALBRECHT-Facundo took the United States Currency, CS-2's same hand grabs the cocaine from ALBRECHT-Facundo. ALBRECHT-Facundo and CS-2 then continued to have conversation, including about money, before CS-2 left the **Subject Vehicle**.

### Information related to Subject Vehicle

24. The license plate currently affixed to the **Subject Vehicle** is a Wisconsin dealership license plate bearing MV4100. That dealership license plate belongs to Lot 31, LLC, a target of this investigation. According to at least one source, Lot 31, LLC was started with the drug proceeds from the sale of cocaine. Because the **Subject Vehicle** has a dealer plate on it, the **Subject Vehicle** is not registered to ALBRECHT-Facundo. Despite this, however, investigators have regularly observed the **Subject Vehicle** parked in close proximity to 8360-28th Avenue, Kenosha, WI, the residence of ALBRECHT-Facundo, including in the driveway. Additionally, two separate sources (SOI-1 and CS-2) have stated that ALBRECHT-Facundo regularly drives the **Subject Vehicle.** Moreover, as described above, ALBRECHT-Facundo utilized the **Subject Vehicle** to deliver 5 ounces of cocaine to CS-2 on June 27, 2023.

25. Based on training and experience, I am aware that individuals involved in drug trafficking and/or money laundering frequently utilize vehicles registered in other people's / companies' names to avoid detection by law enforcement. As a result, I believe ALBRECHT-

8

Facundo conspires with the owner of Lot 31, LLC to utilize vehicles with dealership license plates in an effort to avoid detection by law enforcement.

**Authorization to Track the Subject Vehicle on July 17, 2023**

26. On July 17, 2023, based on the aforementioned information, the Honorable Nancy Joseph, United States Magistrate Judge in and for the Eastern District of Wisconsin, granted a tracking warrant (23-956M(NJ)) authorizing investigators to install and monitor a tracking device on the **Subject Vehicle**.

27. During the authorized 10-day installation period, investigators attempted to install the tracking device on the **Subject Vehicle**, but were unsuccessful. Investigators successfully located the **Subject Vehicle** parked in the driveway of ALBRECHT-Facundo's residence, however, due to multiple surveillance cameras on the residence, including one pointing directly at the **Subject Vehicle** in the driveway, investigators were unable to install the tracking device at the residence, even under the cover of darkness. Additionally, investigators attempted to conduct surveillance on the **Subject Vehicle** in an attempt to install the tracking device at a different location, but the **Subject Vehicle** did not move during the authorized installation period. Investigators learned from SOI-1 that the **Subject Vehicle** was not being driven because ALBRECHT-Facundo was out of town.

**Conclusion**

28. Based on the aforementioned information, I believe that ALBRECHT-Facundo is involved in cocaine trafficking. Furthermore, I believe that ALBRECHT-Facundo is using the **Subject Vehicle** in furtherance of the drug trafficking and money laundering activities of the ALBRECHT-Facundo DTO. On numerous occasions, investigators observed the **Subject Vehicle** parked in close proximity to 8360-28th Avenue, Kenosha, WI, the residence of

ALBRECHT-Facundo. Additionally, multiple investigators have observed the **Subject Vehicle** parked in the driveway or close proximity to 8360-28th Avenue, Kenosha, WI, especially during the early morning hours of the day.

29.     As previously stated, on July 17, 2023, the Honorable Nancy Joseph authorized the tracking of the **Subject Vehicle**, however, investigators were unable to install the tracking device. As a result, I am respectfully requesting a new warrant authorizing the installation of a mobile tracking device on the **Subject Vehicle**.

30.     In order to track the movement of the **Subject Vehicle** effectively and to decrease the chance of detection, I seek to place a tracking device in or on the subject vehicle while it is in the Eastern District of Wisconsin. Because ALBRECHT-Facundo may sometimes park the **Subject Vehicle** on private property, it may be necessary to enter onto private property and/or move the **Subject Vehicle** in order to effect the installation, repair, replacement, and removal of the tracking device. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation and removal of the tracking device during both daytime and nighttime hours. On numerous occasions, investigators personally observed the **Subject Vehicle** parked in close proximity to 8360-28th Avenue, Kenosha, WI, the residence of ALBRECHT-Facundo. Due to the proximity of the parking area to the residence, installation and removal of the tracking device would be extremely difficult to accomplish during daytime hours without being detected, especially due to security cameras being present on the residence.

<b><u>AUTHORIZATION REQUEST</u></b>

31.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 authorizing the periodic monitoring

of the tracking device during both daytime and nighttime hours for a period of 45 days following installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

32. It is further requested that in the event that the **Subject Vehicle** travels outside the territorial jurisdiction of the court, the order authorize the continued monitoring of the electronic tracking device in any jurisdiction within the United States, pursuant to 18 U.S.C. § 3117.

33. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the owner or user of the **Subject Vehicle** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

11

Case 2:23-mj-00136-WED    Filed 08/04/23    Page 14 of 14    Document 1